**UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF FLORIDA**

THE SLIDING DOOR COMPANY
 a California corporation

CASE NO. _____

     Plaintiff,

vs.

LEON BELL, individually and
THE GLASS DOOR COMPANY, INC
d/b/a DOORS22 a Florida Corporation
and DAVID LUSTIG

     Defendants.

_____/

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

     Plaintiff THE SLIDING DOOR COMPANY ("Plaintiff" or "SLIDING DOOR")

hereby complains of LEON BELL ("BELL,") THE GLASS DOOR COMPANY, INC. d/b/a

DOORS22 ("DOORS22") and DAVID LUSTIG ("LUSTIG") (collectively "Defendants") and

allege as follows:

**I.**   **THE NATURE OF THE ACTION**

     This is an action for unfair competition, deceptive and unfair trade practices and common

law infringement so outrageous and obvious that only one of many actions herein includes

Defendants' theft and fraudulent use of Plaintiff's photographs of Plaintiff's products and

installations, as well as an images from ***inside Plaintiff's corporate office*** and placing them on

Defendants' website marked with the false designation "DOORS22."  One example follows:



See also: ***Exhibit 1***, attached showing fifteen (15) images of the copied by Defendants from Plaintiff's website and catalogs including the above image.

   The foregoing is one stark example of Defendants' actions set forth in detail herein for which Defendants have failed to cease and desist despite written demand to do so.  By this litigation, SLIDING DOOR seeks to enjoin Defendants from any further unauthorized use of SLIDING DOOR's images, trademarks, products and designs and to temporarily, preliminary and permanently enjoin Defendants' unfair competition and unfair business practices. Plaintiff also seeks to recover damages, including Defendants' profits, treble damages, reasonable attorneys' fees, costs and such other and further relief as the Court deems just and proper against Defendants' willful violation of federal and Florida law.

## II.   <u>JURISDICTION</u>

1.      This is an action for unfair competition and false designation of origin arising under the Lanham Act 15 U.S.C. § 1051 et seq. and Florida common law, trademark infringement under Florida common law and violations of Florida's Deceptive and Unfair Trade Practices Statute.

2.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (action asserting claim of unfair competition joined with a substantial and related claim under the trademark laws).  The Court has supplemental jurisdiction over the claims in the Complaint which arise under state common law pursuant to 28 U.S.C. §1338(b) and 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive them from a common nucleus of operative facts.

3.      This Court has personal jurisdiction over Defendants because each Defendant has committed and continues to commit the wrongful acts complained of herein, including, without limitation, acts of infringement in violation of 35 U.S.C. § 271 and 15 U.S.C. §1125 and transacts business in the State of Florida and in this District.  Upon information and belief, Defendants derive revenue from interstate and international commerce, unfairly compete with SLIDING DOOR within this District and elsewhere and offer for sale products within this District and/or derive revenue from the sale of products using images of SLIDING DOOR's product falsely designated as products of Defendants within this District. Alternatively, this Court has personal jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2).

4.      The Court has personal jurisdiction over BELL because, upon information and believe, he lives in the Judicial District and has a continuous, systematic and substantial presence

within this Judicial District and within Florida. Upon information and belief, BELL operates and directs and controls the wrongful actions of DOORS22, a fictitious name of THE GLASS DOOR COMPANY, and its corporate and business operations and website in the Judicial District. Based on the foregoing, venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (c) and the substantial portion of the events complained of herein took place in this Judicial District as well.

5.      The Court has personal jurisdiction over LUSTIG because, upon information and believe, he lives in the Judicial District and has a continuous, systematic and substantial presence within this Judicial District and within Florida.  Upon information and belief, LUSTIG operates or assists in the operation or creation of DOORS22's website and business operation in the Judicial District and also directs and controls or performed at least some of the wrongful actions of DOORS 22 complained of herein. Based on the foregoing, venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (c) and the substantial portion of the events complained of herein took place in this Judicial District as well.

6.      In addition, by committing acts of unfair competition, false advertising, deceptive and unfair trade practices, in this Judicial District, Defendants' acts form a substantial part of the events or omissions giving rise to SLIDING DOOR's claims.

7.      The Court has personal jurisdiction over DOORS22 because it has a continuous, systematic and substantial presence within this Judicial District and within Florida.  DOORS22 operates a website and business operation in the Judicial District.  One of DOORS22's social media pages, Facebook, is located at *https://www.facebook.com/DOORS22-107406980794232/* and advertises the location of its showroom located at 6851 SW 21 Court, Suite 11, Fort Lauderdale, Florida 33317.

### III.   <u>VENUE</u>

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants

BELL and LUSTIG reside in the District, Defendants' principal place of business is in the

District, Defendants' transact business within this District and a substantial part of the events

giving rise to this action occurred in this District.

### IV.   <u>THE PARTIES</u>

9.      SLIDING DOOR is a corporation organized and existing under the laws of the

State of California and began operations in 2005. SLIDING DOOR's corporate headquarters are

located in Chatsworth, California.

10.      Defendant, THE GLASS DOOR COMPANY, INC. is a corporation organized

during the summer of 2019 under the laws of the State of Florida, having a principal place of

business at 6851 SW 21st Court, Suite 11, Suite 11, Fort Lauderdale, FL 33317.

11.      THE GLASS DOOR COMPANY has registered and used the Fictitious name

*"DOORS22."*

12.      Upon information and belief, BELL owns, operates and directs and controls the

actions of DOORS22 and DOORS22's decision making including, but not limited to, the

infringing activities described in this Complaint, from its offices in this Judicial District.

13.      Upon information and belief, LUSTIG also operates and/or participates in the

operation and control of DOORS22 and DOORS22's decision making together with BELL

including, but not limited to, the infringing activities described in this Complaint, from its offices

in this Judicial District.

14.     Upon information and belief, within just the past year Defendants have become engaged in the business of distributing, marketing and selling interior doors and related products in competition with SLIDING DOOR.

V.     **COMMON ALLEGATIONS FOR ALL CLAIMS OF RELIEF**

      A.     **SLIDING DOOR's Business**

15.     SLIDING DOOR is a national and international leader in the business of developing, manufacturing, selling, installing and distributing various residential and commercial interior glass door solutions  products, including, without limitation, doors, barn doors, glass closet doors, suspended doors, swing doors, glass doors, bi-fold doors, room dividers, privacy walls, space partitions, office partitions, pass through windows, glass walls, and glass room dividers ("SLIDING DOOR PRODUCTS").

16.     SLIDING DOOR currently operates more than 20 showrooms throughout North America, including a showroom in Fort Lauderdale, Florida.

17.     In connection with its products, SLIDING DOOR has also created novel innovations, including a patented wheel-to-track locking mechanism which insures the panel will not leave the associated track and top rollers that provide a nearly silent glide.

18.     SLIDING DOOR sells its products in several different frame designs and finishes. Other options SLIDING DOOR offers to its customers include glass types, track systems and handles and locks for the products.

19.     SLIDING DOOR has achieved extensive exposure and widespread recognition of its SLIDING DOOR PRODUCTS and brand in the U.S. and abroad through its efforts over a fifteen-year period resulting in being featured on HGTV, in unsolicited articles including the San

Fernando Valley Business Journal and being recognized by famous architects including Donna Leventhal.

20.     SLIDING DOOR is considered an industry trendsetter in fabricating beautiful glass-based products in their own factory where safety and quality are built into every single door panel, including the above-mentioned SLIDING DOOR PRODUCTS.

21.     Since 2005, SLIDING DOOR has consistently and continuously marketed, advertised, displayed, and sold its SLIDING DOOR PRODUCTS and provides its product fabrication and installation services throughout the United States and North America.

*22.*     SLIDING DOOR has conducted substantial and continuous marketing and promotion since its inception.  Since 2005, SLIDING DOOR has spent over $4.5M dollars in advertising, promotion and marketing lighting products including products and services in the U.S. and abroad.  Examples of U.S. marketing and promotional efforts include, without limitation, the following: a webpage at www.slidingdoorco.com; Facebook page at *https://www.facebook.com/TheSlidingDoorCo* as well as Twitter at *https://twitter.com/slidingdoorco*, Instagram at *https://www.instagram.com/slidingdoorco/*, Pinterest at *https://www.pinterest.com/slidingdoorco/* and Youtube at *https://www.youtube.com/channel/UCSqvaMb1jLQ_QZIuGt1z_jA*

23.     In addition, SLIDING DOOR has promoted and advertised its interior door solutions incorporating the its goods and services at numerous U.S. trade shows and industry events.

24.     To SLIDING DOOR's knowledge, no other interior door manufacturer in the world, including the U.S., lawfully markets or sells the same specifically designed SLIDING DOOR PRODUCTS that SLIDING DOOR has sold, fabricated and installed over the years,

which includes SLIDING DOOR PRODUCTS shown in SLIDING DOOR's images wrongfully copied by Defendants and wrongfully displayed on Defendants' Doors22 website as products sold and installed by Defendants.  The SLIDING DOOR PRODUCT are state-of-the art- interior doors and dividers that are both functional and specifically customized to meet client's specific project requirements, ADA compliance, contribute to LEED points, etc.  The SLIDING DOOR PRODUCTS are specifically built and fabricated to the customer's specific project requirements and are not "off the shelf" door items one would find at a Home Depot or Lowe's home improvement store.

25.     SLIDING DOOR has and continues to widely market and promote its SLIDING DOOR PRODUCTS by displaying the such products in the US as follows: over 20 showrooms around the globe, trade shows, press releases, installations at architectural firms as displays, and through Continuing Education Units, AIA credit and Interior Designer credit online provided year-round, with current unit through BNP Media/Architectural Record.

26.     As a result of SLIDING DOOR's substantial use, quality and promotion of its goods and services, its brands and reputation have acquired great value and goodwill, and its brands serve as specific source identifiers  for the SLIDING DOOR PRODUCTS and related services and serve to identify and distinguish the SLIDING DOOR PRODUCTS  and services from those of others. Based on its many years of nationwide use and reputation, customers in this Judicial District and elsewhere readily recognize the SLIDING DOOR brands and are aware of the high reputation and quality of the SLIDING DOOR PRODUCTS and their design, fabrication and installation services and other services related to and involved with the SLIDING DOOR PRODUCTS.  SLIDING DOOR's reputation and goodwill is an extremely important

asset of SLIDING DOOR and having enormous value as a symbol of SLIDING DOOR's quality products and services.

27.     As a significant means for promoting the SLIDING DOOR PRODUCTS to existing and potential new customers, SLIDING DOOR operates its company website at the domain name www.slidingdoorco.com and www.spaceplus.com. A visitor to SLIDING DOOR's websites will be presented with many images of past projects performed by SLIDING DOOR for customers throughout the United States with the images highlighting the specifically built and installed SLIDING DOOR PRODUCTS designed and fabricated for the specific customer's project requirements.

### B.     The Market for Glass Door Products

28.     SLIDING DOOR has made significant investments in research, development, design, branding, and marketing of the SLIDING DOOR PRODUCTS.

29.     SLIDING DOOR has marketed and sold its glass door and other products in the U.S. since 2005. In that time, SLIDING DOOR has provided glass door solutions to more than 20,000 customers, some with repeat projects, throughout the U.S. and elsewhere. Genuine SLIDING DOOR PRODUCTS are sold and installed by SLIDING DOOR throughout the United States, including Florida, as well as Canada, and Philippines.  In the United States and worldwide, SLIDING DOOR maintains quality control standards for all SLIDING DOOR PRODUCTS.

30.     In addition to its above-mentioned website, SLIDING DOOR and its products and services are further promoted at SLIDING DOOR's over 20 showrooms throughout the North America, including a showroom in Fort Lauderdale, Florida.

31.     SLIDING DOOR's investments in advertising and promoting the SLIDING DOOR brand and SLIDING DOOR PRODUCTS and related services have been significant. At the end of SLIDING DOOR's last fiscal year, it spent approximately $4.5 million in marketing and advertising expenses, for marketing, advertising and promotions in the U.S. Prior to the Corona Virus, SLIDING DOOR had budgeted even more money for marketing in the current fiscal year.  SLIDING DOOR's products and services are advertised in the U.S. at trade shows, through email contact, online on SLIDING DOOR's website (www.slidingdoorco.com) and social media pages, in podcasts and through other marketing and advertising ventures.

32.     SLIDING DOOR's high-quality and innovative products have attracted both accolades and media attention as well.

33.     SLIDING DOOR's efforts in creating and promoting its brand and its high quality, distinctively designed products have been well worth the effort. Since its founding in 2005, its business has consistently grown each year, and SLIDING DOOR expects to continue to grow in the future, with the hopeful decline of the Corona Virus, through more widespread sales and installation of the SLIDING DOOR PRODUCTS. With these plans on the horizon, maintaining a positive and consistent brand image and reputation is extremely critical for SLIDING DOOR at this time and in the future.

34.     As a result of these promotional efforts, widespread press, and sales and installation of the SLIDING DOOR PRODUCTS, SLIDING DOOR has maintained a well-respected reputation and goodwill within the industry as a maker and installer of high-quality interior glass door and room divider solutions.  The superior quality of products that SLIDING DOOR designs, fabricates and installs, have come to symbolize the goodwill of the SLIDING DOOR PRODUCTS throughout the U.S. and elsewhere.

35.     In the year 2005, long before Defendants' acts described herein, SLIDING DOOR coined and adopted the trademark *"WENGE"* as a source identifier for a unique frame finish created using rice paper with a wood grain image on it, applying it to anodized aluminum over time and using heat.   SLIDING DOOR has continuously used the coined term *"WENGE"* for a particular frame finish since its adoption throughout the United States, including in the State of Florida and Broward Country, Florida.

36.     The coined term *"WENGE"* is inherently distinctive for SLIDING DOOR's frame finish. However, in the event such term is considered descriptive or misdescriptive, in view of SLIDING DOOR's long and continuous use of the such term, the term *"WENGE"* has become distinctive and acquired a secondary mearing as a trademark for SLIDING DOOR long before Defendants began their Doors 22 business.


### C.     Defendant's Infringing Activities

37.     In approximately December 2019 SLIDING DOOR was working with a website SEO company performing analytics on their website.  The SEO company identified unusual activity on their website whereby Defendant LUSTIG had been significantly accessing at least one of SLIDING DOOR's website, staying on the site viewing various pages in the gallery, features section, blog section and other website pages.

38.     LUSTIG was known to the principals of SLIDING DOOR and had been an employee or partner of an entity called "" purchased by SLIDING DOOR prior to December 2019.  LUSTIG had prior knowledge of SLIDING DOOR's business, business practices, products and website.

39.     After receipt of that information SLIDING DOOR's CEO contacted LUSTIG to inquire about his access of the SLIDING DOOR website.  At that time LUSTIG denied both accessing the website and that he continued to work in the glass door industry.

40.     On or about May 22, 2020 management for SLIDING DOOR was advised by an Atlanta salesperson that she had lost a project to a company named "DOORS22."  The customer who purchased from DOORS22 stated "I get the exact same product but cheaper."   Despite the customer's beliefs, they will not receive SLIDING DOOR products wrongfully displayed by Defendants on the DOORS22 website through the wrongful copying of and use of SLIDING DOOR's images of SLIDING DOOR products and installations.

41.     An initial review of the DOORS22 website (www.doors22.com) by that salesperson indicated that although she had never heard of them, their website pictures look exactly like SLIDING DOOR's pictures.

42.      SLIDING DOOR began investigating DOORS22 and their website and determined that many of the images on the DOORS22 website were merely images copied or otherwise taken from the SLIDING DOOR website and catalogs.   A more in-depth analysis revealed the following actions of copying and apparent fraud, unfair competition and false advertising on the DOORS22 website:

   a.     The DOORS22 website contained at least fifteen (15) images wrongfully stolen from SLIDING DOOR's website and catalogs;  See *Exhibit A.*

   b.     The photos stolen from SLIDING DOOR had been manipulated in an attempt to disguise the theft, where some images were cropped and/or some images were reversed in appearance;

      c.      Defendant fraudulently included a "DOORS22" watermark over the images falsely suggesting that the images originated from DOORS22, and that the products or installations seen in the images were sold and installed by DOORS22.

      d.      Defendants fraudulently removed the photographer's attribution on a number of the SLIDING DOOR photographs;

      e.      Defendants copied the topics and titles of SLIDING GLASS's website hosted blog; and

      f.      Defendants began using SLIDING DOOR's WENGE trademark as the name of a frame option for DOORS22's products

43.      After investigating the fraudulent DOORS22 website SLIDING GLASS investigated the background and ownership of DOORS22.  SLIDING DOOR determined that DOORS22 was the fictitious name of a company set up by Defendant BELL only months earlier.  BELL chose the name "THE GLASS DOOR COMPANY" for his new entity, one generic word different from SLIDING DOOR's "THE SLIDING DOOR COMPANY" name.  Upon information and belief, BELL chose a corporate name highly similar to Plaintiff's corporation name, coupled with their other actions complained of herein, with the intent to cause consumer confusion and wrongfully deprived Plaintiff of business and customers.

### D.      Defendants' Action Is Intentional

44.      None of the Defendants are authorized manufacturers, distributors, or sellers of the SLIDING DOOR PRODUCTS.

45.      DOORS22, BELL and LUSTIG were aware of SLIDING DOOR's products, intellectual property rights and marketing, based on the prior working relationship between

SLIDING DOOR and LUSTIG.  Bell, alone and/or together with LUSTIG, owns, operates, directs and is the controlling force behind DOORS22 business decisions including the wrongful conduct and actions which is the subject of this action.

46.     On information and belief, Defendants, like DOORS22, had a nearly endless variety of options to choose from for their website to promote products that they offer and highlight products and installations they have actually performed. Defendants could have easily designed a competing website showing image of  their actual products and installations, without infringing or violating SLIDING DOOR's intellectual property rights and other rights and without wrongfully using SLIDING DOOR's images promoting SLIDING DOOR PRODUCTS and the product installations performed by SLIDING DOOR, just as other legitimate competitors have done.

47.     On information and belief, the only possible explanation for the foregoing is that the Defendants are attempting to unlawfully profit from SLIDING DOOR's hard-earned goodwill and positive reputation, and to wrongfully deceive potential customers to the DOORS22 website to believe that products and installations seen in the images wrongfully displayed on the DOORS22 website, including, without limitation, SLIDING DOOR's images copied by Doors 22, show products actually sold and installed by DOORS22, when they do not. The Defendants' copying of so many images and parts of the SLIDING DOOR website and catalogs could only indicate their intent to infringe and wrongfully benefit from SLIDING DOOR's reputation and confuse consumers into purchasing DOORS22 products believing they were receiving SLIDING DOOR's products, as the DOORS22 website falsely deceives and misrepresents to a consumer the number of sales and installations that DOORS22 actually has made and performed.

48.     With the number of SLIDING DOOR product images, as well as other third party competitor images, appearing on the DOORS22 website, a consumer to the DOORS22 website will be deceived by DOORS22 to believe that DOORS22 is a well-established company in the industry and that DOORS22 has sold and installed many various types of interior door/divider products for what would have had to be for years.

49.     Without permission or consent from SLIDING DOOR, Defendants have sold or are offering for sale or promoting the same types of products sold and installed by SLIDING DOORS using images of SLIDING DOOR's products and installations. As SLIDING DOOR PRODUCTS and installations, and SLIDING DOOR images, appear on the DOORS22 website, a likelihood of consumer confusion or mistake by potential customers between SLIDING DOOR and Defendants is being created and caused by Defendants' wrongful actions.

50.      To further create consumer confusion, after wrongfully copying and using the SLIDING DOOR images on the DOORS22 website, Defendants wrongfully installed a DOORS22 watermark on each of the SLIDING DOOR images, to further wrongfully mislead, deceive and falsely advertise to a consumer to the DOORS22 website, that the SLIDING DOOR images actually originated or were created by Defendants and that the products displayed in the images were sold and installed by DOORS22.

51.     In addition, Defendants actively and intentionally cropped out the photographer's name and signatures from a number of the SLIDING DOOR photos.   See one example:



Evgeny Leznik, signature  -photographer for SLIDING DOOR on their site

Compare : Photo from Defendants' Doors22 web site.



rooms to set them apart from the re
cubicles and partitions in a variety o
size. Our glass doors can be ordered
milky glass to promote natural light
your office a step above the compet
came up with a refined, classy, mod
perfect marriage between the fram
mechanism. Needless to say, somet
years of trial and error in order to cre
between all components.

Contact Us >

52.     Upon information and belief, Defendants' actions alleged herein are intended to cause confusion, mistake or deception as to the source of Defendants' products and are intended to cause customers and potential customers to believe that Defendants' business and the goods that it offers are associated with SLIDING DOOR and its products or the same products sold by SLIDING DOOR when they are not.

53.     Upon information and belief, Defendant's actions alleged herein constitute a false designation of origin, false or misleading descriptions of fact and/or false or misleading representations of fact and are likely to cause consumer mistake or cause consumers to be deceive as to the affiliation, connection, or association of Defendants with SLIDING DOOR or to the origin, sponsorship or approval of Defendants' goods and services or commercial activities by SLIDING DOOR.

54.     Defendants' actions alleged herein involve commercial advertising or promotion for the DOORS22 business.

55.     Upon information and belief, Defendants' actions alleged herein misrepresent the nature, characteristic, qualities, or geographic origin of DOORS22's goods, services and/or commercial activities.  Additionally, Defendants improperly refer to the glass types as "milky" and "frosted glass," terms long used by SLIDING DOOR, to improperly cause customer confusion and damaging the reputation of the SLIDING DOOR products featured in the photographs.

56.     Upon information and belief, Defendants' actions alleged herein misrepresent the nature, characteristic, qualities, or geographic origin of SLIDING DOOR's goods, services and/or commercial activities.

57.     Indeed, Defendants had a duty to avoid confusion with SLIDING DOOR and to avoid misrepresenting SLIDING DOOR's products and Defendant's own products. This obligation to avoid confusion, deception and misrepresenting is further enhanced in view of Defendants entering the market long after SLIDING DOOR, as well as the fact of LUSTIG's prior business relationship with SLIDING DOOR.  Nevertheless, Defendants have purposely sold, promoted, marketed, and/or misdescribed its products in a manner that causes a likelihood

of confusion with SLIDING DOOR or mistake or deception by consumers, as well as constituting false advertising and unfair competition.

58.     More so, when asked by SLIDING DOOR if he visited the SLIDING DOOR website LUSTIG denied the same.  He also denied currently working in the glass door industry. Despite these denials, over the recent July 4th weekend LUSTIG was observed working at the DOORS22 showroom in Fort Lauderdale Florida where he introduced himself as the manager. Obviously, his intent has been to misrepresent his true actions and intentions and hide the fraud and other wrongful conduct engaged by and between himself and the other Defendants.

59.     By virtue of the acts complained of Defendants have created and caused a likelihood of injury to SLIDING DOOR's business reputation and goodwill, caused a likelihood of customer confusion, mistake and deception as to the source of origin or relationship of SLIDING DOOR's Products and DOORS22's products and to the specific products themselves, and have otherwise competed unfairly with SLIDING DOOR by unlawfully trading on and using the SLIDING DOOR's images, installation history and reputation without SLIDING DOOR's consent and to give the false appearance and impression to potential consumers that DOORS22 has much more sales and installations and experience in the industry than they actually have.

60.     Thereafter SLIDING DOOR engaged counsel and served DOORS22 and Bell with a demand to cease and desist their illegal actions.  See *Exhibit 2* attached.

61.     DOORS22 and BELL received the cease and desist demand but failed and refused to cease their illegal actions.

62.     As a result of the foregoing, Defendants' acts complained of herein are willful and deliberate.

e. **SLIDING DOOR Has Suffered Substantial Damages and Irreparable Harm as a Result of Defendants' unlawful conduct**

62.     Defendants' advertising, marketing, sale and/or offer for sale of its alleged products using images of SLIDING DOOR's products and installations is likely to cause and has caused confusion, mistake, and deception by and among consumers and is incredibly damaging to SLIDING DOOR's finances, its brand, reputation and goodwill, and it rightful market share. Without the relief requested in this action, Defendants' illegal activities will continue unabated and SLIDING DOOR will continue to suffer harm.

63.     Defendants' advertising, marketing, sale and/or offer for sale of its alleged products using images of SLIDING DOOR's products and installations in Defendants' commercial advertising and promotion, misrepresents the nature, characteristic, qualities, and/or geographic origin of both Defendants' goods and services, as well as to SLIDING DOOR's products and services.

64.     Furthermore, by adding a DOORS22 watermark to the images copied from SLIDING DOOR, which actually illustrate SLIDING DOOR PRODUCTS and installations, Defendants have furthered misrepresented the nature, characteristic, qualities and/or geographic origin of both Defendants' goods and services, as well as to SLIDING DOOR's products and services, in DOORS22's commercial advertising and promotion.

65.     Additionally, Defendants have taken product names from the SLIDING DOOR website and placing them on the DOORS22 website in describing different SLIDING DOOR Products.  The foregoing causes customer confusion and degrades the reputation and branding of SLIDING DOOR's Products.  An example is the following where Defendant describes the featured product as "quattro, a SLIDING DOOR Product name.  Additionally, Defendants'

description is inaccurate as the SLIDING FOOR Product featured in the below image is actually SLIDING DOOR's "Pentagon" design with 5 glass sections.



65.     On information and belief, because the market for the glass door products is finite, every sale of the products made by Defendants results in a direct loss to SLIDING DOOR, especially where Defendants prominently use images of SLIDING DOOR's products and installations to sell Defendant's products. As Defendants' online market for selling the products increases, SLIDING DOOR's shrinks.

66.     Plaintiffs have been and continue to be irreparably harmed by Defendants' wrongful activities and many violations of SLIDING DOOR's rights. In particular, Defendants' conduct has irreparably harmed and will continue to irreparably harm SLIDING DOOR because Defendants' actions have caused and will continue to cause Plaintiffs to suffer loss of market share and access to customers, strained business relationships with third parties, price erosion and loss of goodwill and reputation. SLIDING DOOR lacks an adequate remedy at law to

compensate for the harm that it has suffered, and, absent the requested preliminary relief,

Plaintiffs will continue to be harmed by Defendants' illegal activities.

67.     On information and belief, Defendants' infringing acts severely undermine

SLIDING DOOR's significant investment in its products, services and reputation, to SLIDING

DOOR's detriment.

68.     SLIDING DOOR brings this action seeking damages and injunctive relief to

remedy the harm it has suffered and continues to suffer as a result of Defendants' wrongful acts

and violations.

## VI.    **FIRST CLAIM FOR RELIEF – UNFAIR COMPETITION, FALSE ADVERTISING AND FALSE DESCRIPTON OF FACT - 15 U.S.C. § 1125(a)**

69.     SLIDING DOOR hereby repeats, realleges an incorporates by reference

paragraphs 1 - 68 of this Complaint as though fully set forth herein.

70.     This is an action for unfair competition, false advertising and false description of

fact under 15 U.S.C §1125(a).

71.     As described in detail above, Defendants have wrongfully copied and published

on their commercial website false and materially misleading descriptions of fact and false claims

regarding products they have previously sold and installed.

72.     Such false and misleading publications include SLIDING DOOR images copied

by Defendants which illustrate products and installations sold and actually performed by

SLIDING DOOR not Defendants.

73.     In addition, to wrongfully using the copied SLIDING DOOR images in a false

and misleading manner, Defendants additionally add a DOORS22 watermark to the copied

images to further mislead consumers as to the origin of the images and the products and

installations shown in the images.

74.     Furthermore, in many of the SLIDING DOOR images copied by Defendants that appear on the DOORS22 website, the product description is inaccurate and does not describe the Sliding Door product actually seen in the copied image.

75.     The above described actions of the corporate Defendant were spearheaded, participated in, directed and controlled by Defendant Bell and/or Defendant Lusting. Such actions of all defendants have been deliberate with full knowledge that many of the images appearing on the DOORS22 website purporting to be products sold and installed by Defendants were images copied from SLIDING DOOR and showing products actually sold and installed by SLIDING DOOR.

76.     The Defendants knowingly and deliberately disseminated false, misleading and/or disparaging advertising.

77.     These false, misleading and disparaging representations were and are intended to harm SLIDING DOOR by seeking to persuade, deceive or mislead, potential customers as the extent and experience level of DOORS22 in the interior door industry. These wrongful representations by Defendants will cause potential customers to hire Defendants instead of SLIDING DOOR by misleading customers to believe that Doors has previously sold and installed the products shown in images copied by Defendants, when in fact the products in the images were sold and installed by SLIDING DOOR.

78.     Defendants' false and materially misleading descriptions of fact and false claims are targeted and intended to deceive the consuming public, including, without limitation, potential customers who would have purchased the products from SLIDING DOOR but for Defendants' wrongful actions.

79.     Defendants' false and materially misleading descriptions of fact and false claims in commercial advertising and promotion violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

80.     SLIDING DOOR is entitled to have Defendants' temporarily, preliminarily and permanently enjoined from continuing their above-complained wrongful actions, including, without limitation, the continued use, display and publishing of the images appearing on the DOORS22 website that were copied from SLIDING DOOR and show products sold and installed by SLIDING DOOR.

81.     If Defendants are not enjoined, SLIDING DOOR will continue its wrongful actions in an effort to further deceive and mislead consumers about the DOORS22 products and SLIDING DOOR PRODUCTS, which will cause SLIDING DOOR to continue to suffer immediate, continuing and irreparable harm to its goodwill, reputation and products.

82.     SLIDING DOOR is without an adequate remedy at law to prevent Defendants' wrongful acts and the likely harm that SLIDING DOOR may suffer, if Defendants' acts are not enjoined.

83.     This court should temporarily, preliminarily and permanently enjoin Defendants' false, misleading, and disparaging advertising, under Section 34 of the Lanham Act, 15 U.S.C. § 1116.

84.     In addition, SLIDING DOOR is entitled to disgorgement of Defendants' profits, and its actual damages, trebled in accordance with the Lanham Act.

## VII.   <u>SECOND CLAIM FOR RELIEF – UNFAIR COMPETITION and FALSE DESIGNATION OF ORIGIN UNDER  15 U.S.C. § 1125(a)</u>

85.     SLIDING DOOR hereby repeats, realleges an incorporates by reference paragraphs 1 - 68 of this Complaint as though fully set forth herein.

86.     This is an action for unfair competition and false designation of origin under 15 U.S.C §1125(a).

87.     By using SLIDING DOOR installed product images copied from SLIDING DOOR on the DOORS22 website and adding a DOORS22 watermark to the images to deceive and mislead consumers to believe that the products shown in the images are products sold and installed by Defendants, Defendants created a false designation of origin as to products shown on Defendants' website.

88.     Defendants' actions are likely to cause confusion and mistake, or to deceive as to the affiliation, connection, or association between SLIDING DOOR and Defendants, and/or as to the origin, sponsorship or approval of Defendants' products or Defendants' commercial activities in violation of 15 U. S. C. §1125(a).

89.     Upon information and belief, Defendants did so with the intent to trade upon SLIDING DOOR's reputation and goodwill and to mislead customers in believe that they had sold and installed more products than they actually have. These wrongful actions by Defendants are causing confusion and mistake among customers and the public and/or deceiving the public into believing that Defendants' Products are associated with, sponsored by or approved by SLIDING DOOR, when they are not.

90.     Defendants, by their actions, have irreparably harmed SLIDING DOOR.  Such irreparable injury will continue unless Defendants are temporarily, preliminarily and permanently enjoined by the Court from further violation of SLIDING DOOR's rights for which SLIDING DOOR has no adequate remedy at law.

91.     Defendants' actions constitute false designation of origin, and/or unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

92.     SLIDING DOOR has been and will continue to be irreparably harmed and damaged by Defendants' conduct and wrongful activities, and SLIDING DOOR lacks an adequate remedy at law to compensate for this harm and damage. Accordingly, SLIDING DOOR is entitled to injunctive relief pursuant to 15 U.S.C. §1116.

93.     On information and belief, Defendants have gained profits by virtue of their above-described wrongful actions.

94.     SLIDING DOOR has sustained damages as a direct and proximate result of Defendants' wrongful actions in an amount to be proven at trial.

95.     Because Defendants' actions have been willful, SLIDING DOOR is entitled to treble its actual damages or Defendants' profits, whichever is greater, and to an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. §1117(a).

## VIII.   THIRD CLAIM FOR RELIEF – FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

96.     SLIDING DOOR hereby repeats, realleges an incorporates by reference paragraphs 1 - 68 of this Complaint as though fully set forth herein.

97.     Defendants' wrongful actions alleged herein constitute deceptive and unfair trade practices in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq*.

98.     Defendants have a business operation in Florida, do business in Florida and engage in trade or commerce under FDUTPA.

99.     The Defendants above described actions are deceptive and misleading and such actions evidence deceptive and unfair trade practices by the Defendant under FDUTPA.

100.    Defendants deceptive and misleading actions are causing harm to SLIDING DOOR.

101.    Defendants wrongful actions are likely to deceive consumers acting reasonably.

102.    The public has an interest in not being misled and deceived by Defendants wrongful action.

103.    Defendants wrongful use, copying and manipulation of the SLIDING DOOR images is clearly unfair and wrongfully deceives the public in thinking that Defendants have sold and installed many more products than they actually have.

104.    Defendants have committed unfair methods of competition or unfair or deceptive acts or practices in violation of FDUTPA by engaging in the wrongful conduct described above.

105.    SLIDING DOOR has suffered actual damages proximately caused by Defendants' violation of FDUTPA.

106.    Defendants' aforementioned acts have damaged SLIDING DOOR in an amount to be determined at trial.

107.    Defendants by their actions have irreparably injured SLIDING DOOR.  Such irreparable injury will continue unless Defendants are temporarily preliminarily and permanently enjoined by the Court from further violation of SLIDING DOOR's rights, for which SLIDING DOOR has no adequate remedy at law.

## IX.    FOURTH CLAIM FOR RELIEF – UNFAIR COMPETITION UNDER FLORIDA COMMON LAW

108.    SLIDING DOOR hereby repeats, realleges an incorporates by reference paragraphs 1 - 68 of this Complaint as though fully set forth herein.

109.    This is an action for unfair competition under the common law for the State of Florida.

110.    By virtue of the acts complained of herein, Defendants' wrongful actions constitute unfair competition by Defendants under the common law of the State of Florida.

111.    Defendants' acts complained of herein are unlawful and have injured and damaged SLIDING DOOR.

112.    Defendants' actions have been willful, deliberate and intended to benefit Defendants at SLIDING DOOR's expense.

113.    Defendants' aforementioned acts have damaged SLIDING DOOR in an amount to be determined at trial.

114.    Defendants by their actions have irreparably injured SLIDING DOOR.  Such irreparable injury will continue unless Defendants are temporarily preliminarily and permanently enjoined by the Court from further violation of SLIDING DOOR's rights, for which SLIDING DOOR has no adequate remedy at law.

115.    Defendants' willful acts constitute unfair competition under Florida common law and constitute fraud, oppression and malice.  Plaintiff reserves the right to amend this Complaint to assert a claim of punitive damages for Defendants' actions.

## X.    FIFTH CLAIM FOR RELIEF – TRADEMARK INFRINGEMENT UNDER FLORIDA COMMON LAW - WENGE

116.    SLIDING DOOR hereby repeats, realleges an incorporates by reference paragraphs 1 - 68 of this Complaint as though fully set forth herein.

117.    This is an action for trademark infringement under the common law for the State of Florida.

118.    SLIDING DOOR's WENGE trademark is inherently distinctive or has become distinctive and acquired secondary meaning long before Defendants began using WEGNE in connection with similar products to SLIDING DOOR.

119.     SLIDING DOOR is the prior and senior user of the WEGNE trademark which was in use by SLIDING DOOR in the U.S. and State of Florida long before Defendants' began using WEGNE.

120.     Since SLIDING DOOR introduced and began using its WEGNE trademark it has continuously used such trademark in in the U.S. and in the State of Florida.

121.     Defendants' use of WEGNE is confusingly similar to SLIDING DOOR's WEGNE trademark and is used to identify a similar product in competition with SLIDING DOOR in the same area of SLIDING DOOR's established trademark rights.

122.     By virtue of the acts complained of herein, Defendants' wrongful actions will likely cause consumer confusion as to the sponsorship or approval of Defendants' products by SLIDING DOOR and such actions constitute trademark infringement by Defendants under the common law of the State of Florida.

123.     Defendants acts complained of herein are unlawful and have injured and damaged SLIDING DOOR.

124.     Defendants' aforementioned acts have damaged SLIDING DOOR in an amount to be determined at trial.

125.     Defendants by their actions have irreparably injured SLIDING DOOR.  Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by the Court from further violation of SLIDING DOOR's rights, for which SLIDING DOOR has no adequate remedy at law.

126.     Defendants' willful acts constitute trademark infringement under Florida common law and constitute fraud, oppression and malice.  Plaintiff' reserves the right to amend this Complaint to assert a claim of punitive damages for Defendants' actions.

127.    Plaintiff' reserves the right to amend this Complaint to assert a claim of punitive damages for Defendants' actions.

## XII.    **PRAYER FOR RELIEF**

*WHEREFORE,* SLIDING DOOR prays for judgment against Defendants as follows:

1.    That the Court render a final judgment in favor of SLIDING DOOR and against Defendants on all claims of relief and causes of action alleged herein;

2.    That the Court render a final judgment that Defendants have violated the provisions of 15 U.S.C. § 1125(a) by unfair competing with SLIDING DOOR through the wrongful copying, use and manipulation of SLIDING DOOR's images by Defendants' creating a false designation of origin, causing consumer mistake and deception, and causing a false description of fact and false advertising by Defendants' through Defendants' marketing, sale and promotion of Defendants' products using the SLIDING DOOR images showing SLIDING DOOR installed products.

3.    That the Court enter a final judgment declaring that Defendants' actions and practices violate Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*;

4.    That the Court enter a final judgment declaring that Defendants have violated Florida common law by committing trademark infringement and unfairly competing with SLIDING DOOR;

5.    That Defendants, their agents, servants, employees, managers, directors, officers, attorneys, successors, and assigns and all other persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise be forthwith temporarily, preliminarily and permanently enjoined from:

a.      using any SLIDING DOOR image, whether manipulated or not, on the

Doors 22 website or in connection with the advertising, promotion or sale of Defendants'

products and/or services in any manner;

b.      making any false or misleading descriptions of fact or representation of

fact;

c.      misrepresenting the nature, characteristics, qualities or geographic origin

of Defendants' goods, services or commercial activities in commercial advertising and

promotion;

d.      misrepresenting the nature, characteristics, qualities or geographic origin

of SLIDING DOOR's goods, services or commercial activities in commercial advertising and

promotion;

e.      distributing, shipping/exporting, importing, displaying, advertising,

marketing, promoting, or using any SLIDING DOOR Image in connection with the selling

and/or offering to sell of any products by Defendants;

f.      violating the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §

501.201 *et seq*. and otherwise assisting, aiding or abetting any other person or entity from

violating thereof;

g.      using the WENGE trademark in connection with any of Defendants'

products, or using any other trademark or service mark of SLIDING DOOR in connection with

Defendants' goods, services and/or commercial activities;

h.      filing any applications for registration of the WENGE trademark or any

other trademark used by SLIDING DOOR;

i.      falsely designating the origin of Defendants' products;

j.      unfairly competing with SLIDING DOOR in any manner whatsoever; and

k.      causing a likelihood of confusion or injury to SLIDING DOOR's business reputation and goodwill;

6.      That Defendants be directed to file with this Court and serve on SLIDING DOOR within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which it has complied with the injunction pursuant to 15 U.S.C. §1116 and the Court's Injunction;

7.      That Defendants be required to account to SLIDING DOOR for any and all profits derived by Defendants and all damages sustained by SLIDING DOOR by virtue of Defendants' acts complained of herein;

8.      That Defendants be ordered to pay over to SLIDING DOOR all monetary damages which SLIDING DOOR has sustained as a consequence of the acts complained of herein, subject to proof at trial, together with prejudgment and post-judgment interest;

9.      That Defendants' actions be deemed willful;

10.     That this case be deemed exceptional and the amount of the damages be trebled, and the amount of profits be increased by as many times as the Court deems appropriate, pursuant to 15 U.S.C. § 1117;

11.     That an award of reasonable costs, expenses and attorneys' fees be awarded to SLIDING DOOR pursuant to at least 15 U.S.C. §1117 and Fla. Stat. § 501.2105;

12.     That Defendants be required to deliver and destroy all devices, literature, advertising, products, website pages, social media pages, files, disks, drives goods and other unauthorized material containing one or more of the SLIDING DOOR images and/or bearing the WEGNE trademark or any confusingly similar trademark pursuant to 15 U.S.C. §1118;

13.     That SLIDING DOOR be awarded restitution and disgorgement; and

14.     That SLIDING DOOR be awarded such other and further relief and the Court

may deem just.

## XI.      **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff THE SLIDING

DOOR COMPANY hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

**BRADLEY LEGAL GROUP, P.A.**

Date:  July 16, 2020                         By:  _____/s/ John F. Bradley, Esq._____
                                                      Attorneys for Plaintiff
                                                      1217 East Broward Boulevard
                                                      Fort Lauderdale, FL 33301
                                                      Phone: (954) 523-6160
                                                      Email: jb@bradlegal.com